IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER GONZALEZ                                                                           PLAINTIFF

v.                                          Case No. 5:13-CV-05040

WASHINGTON COUNTY, ARKANSAS; TIM HELDER,
Washington County Sheriff, in his individual and official
capacities; and TIFFANY SCOTT, Detention Corporal, in
her individual and official capacities; JOHN DOES 1 & 2,
Detention Officers, in their individual and official capacities           DEFENDANTS

**OPINION AND ORDER**

Currently before the Court are Defendants' motion for summary judgment (Doc. 12) and supporting documents (Docs. 13-14), Plaintiff Christopher Gonzalez's response (Doc. 22) and supporting documents (Docs. 23-24), and Defendants' reply (Doc. 25). For the reasons stated below, the Court finds that Defendants' motion for summary judgment should be GRANTED.

**I.   Background**

This lawsuit arises out of an incident that occurred on March 17, 2010, at which time Gonzalez was a pre-trial detainee housed in the "N-Block" at the Washington County Detention Center. Prior to that date, Gonzalez had been housed in the same block as a federal detainee, Onyebuchi Odunukwe, during which time there were threats and verbal confrontations between Gonzalez and Odunukwe. At some point, Gonzalez and Odunukwe were separated because of these issues. On March 17, 2010, Odunukwe was walking through the hallways of the detention center unescorted. When Odunukwe reached the door to the N-Block, he pressed an intercom button and requested entry to the cell block from the detention officers working in the control room. The door was opened remotely from the control room, allowing Odunukwe access to the N-Block where

Gonzalez was present. Upon entry, Odunukwe attacked Gonzalez causing him injury.

Gonzalez filed his complaint on February 26, 2013, bringing claims against Defendants pursuant to 42 U.S.C. § 1983 for failure to protect him in violation of the Eighth and Fourteenth Amendments[1] to the United States Constitution. There is only one count—for "failure to protect"—explicitly set out in Gonzalez's complaint. That count does not mention any grounds for liability as to Defendant Washington County. In the first paragraph, however, Gonzalez states that the action is against Washington County "for failing to implement policies, practices, and procedures to prevent the use of violations [sic] of the Plaintiffs [sic] or other prisoner's [sic] right [sic] to be protected in the Washington County Detention Center."[2] (Doc. 1, ¶ 1). He also claims in that same paragraph that his claims against the remaining Defendants are for "excessive force." *Id*. Upon review of the complaint in the context of the full record in this case, however, the Court finds that Gonzalez has alleged the following plausible claims:

(1) Claims against Defendants Tiffany Scott[3] and Sheriff Tim Helder in their individual capacities for failure to adequately train or supervise;

---

[1] Plaintiff also requests that the Court enter a declaratory judgment stating that Defendants acted in violation of the Fourth Amendment. (Doc. 1, ¶ 39). As the fourth amendment right to be free from unreasonable searches and seizures does not appear to apply to this case, the Court will assume that this request was made in error.

[2] Throughout the complaint, Gonzalez alternately alleges that Washington County did not establish proper policies to prevent his injuries and that his injuries were caused when the individual defendants acted in violation of established policies in allowing the N-Block door to be opened. In his response to Defendants' motion for summary judgment, Gonzalez expressly states that "[t]he Washington County Sheriff's office has in place appropriate policies for the surveillance of the facility. Exhibit 3. It simply does not follow them." (Doc. 24, p. 9).

[3] Although it appears that Ms. Scott's correct name may be Tiffaine Scott, as she is referred to in Defendants' filings, the Court uses the name as alleged by Plaintiff and as listed in the caption of the case.

    (2)      A claim against Scott in her individual capacity for failure to protect from an excessive risk of harm in allowing Odunukwe access to Gonzalez by opening the N-Block door; and

    (3)      A claim against Washington County[4] for violation of Gonzalez's constitutional rights resulting from a policy or custom of the County.

Regarding Gonzalez's second claim, the parties are now in agreement that Scott was not the control-room officer who pushed the button to open the N-Block door allowing Odunukwe access to Gonzalez. The Court finds, therefore, that there is no genuine dispute as to any material fact regarding claim two and that Scott is entitled to summary judgment in her favor as to that claim. The other two claims will each be discussed below.

### III.  Discussion

The party moving for summary judgment bears the burden of proving both the absence of a genuine issue of material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 742 (8th Cir. 2009). The Court must review the facts in the light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). "In order for there to be a 'genuine issue of material fact,' the evidence must be 'such that a reasonable jury could return a verdict for the

---

[4] Gonzalez's claims against Scott and Helder in their official capacities are redundant to the claim against Washington County. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (affirming district court's dismissal of an official capacity claim as redundant of a claim against the employing governmental entity). The Court will not, therefore, address the official capacity claims separately.

nonmoving party.'" *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66-67 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"In order to establish an Eighth Amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a substantial risk of serious harm." *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (internal quotation omitted). "An official is deliberately indifferent if he or she actually knows of a substantial risk and fails to respond reasonably." *Id*. An official must be "both aware of facts from which the inference could be drawn that a substantial risk of harm existed, and he must also draw the inference." *Walls v. Tadman*, 2014 WL 3882552, at *3 (8th Cir. Aug. 8, 2014) (quotation omitted). "[T]he Due Process Clause affords pretrial detainees at least as much protection as the Eighth Amendment provides to convicted prisoners." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014).

Gonzalez did not name as a defendant in this case the control-room officer who actually pressed the button to allow Odunukwe access to Gonzalez, and the Court denied Gonzalez's motion to amend his complaint to add the officer, Joel Peterman, as untimely. Even had Peterman been added as a defendant, the record before the Court indicates that Peterman did not act with deliberate indifference when he opened the N-Block door. Instead, it appears that Peterman acted under the mistaken belief that he recognized Odunukwe's voice as that of another deputy. A mistake or misjudgment does not constitute deliberate indifference. *Spann v. Roper*, 453 F.3d 1007, 1008 (8th Cir. 2006) (prison nurse did not exhibit deliberate indifference when forcing inmate to take another inmate's medication as it was undisputed that the nurse made a mistake) (citing *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (to succeed on deliberate-indifference claim, plaintiff must show more than negligence or gross negligence). The Court does not make any final determinations

as to whether Gonzalez may or may not have been able to ultimately prove a claim against Peterman specifically, as no such claim is before the Court. Some consideration of Peterman's actions is, however, necessary in analyzing the claims against the named Defendants.

> **A.    Failure to Supervise or Train: Defendants Scott and Helder**

"'Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Id*. (quotation omitted). In order to show that an official violated his rights by failing to supervise Peterman, Gonzalez must show that the official:

(1) Received notice of a pattern of unconstitutional acts committed by subordinates;

(2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts;

(3) Failed to take sufficient remedial action; and

(4) That such failure proximately caused injury to [Gonzalez].

*Id*. at 1002 (quotation omitted).

Gonzalez alleges only that Scott "allowed" Odunukwe to wander the halls of the detention center unescorted and to enter a prisoner cell block to which he was not assigned. Gonzalez alleges that, on the date of his injuries, Scott "was the control-room officer assigned to the duty of protecting the inmates housed in the Detention Center." (Doc. 1, ¶ 13). In his response to Defendants' motion for summary judgment, Gonzalez argues only that Joel Peterman was acting under Scott's control

when Peterman committed the singular act of pressing the button to open the N-Block door. Essentially, Gonzalez argues that Scott should be held liable based on her presence in the control room and her passive failure to monitor Peterman's actions. While a correctional officer may violate the rights of a victim inmate when the officer stands by and takes no action to intervene during an assault,[5] Gonzalez makes no allegations—and raises no dispute of fact—regarding any failure by Scott to intervene to stop the assault of Gonzalez if and when Scott became of aware of the situation.

Even when viewed in a light most favorable to Gonzalez, the record reveals nothing to suggest that Scott had notice of a pattern of unconstitutional acts committed by her subordinates. The record fails to raise a genuine issue as to whether, even in this instance, Peterman's actions rose to the level of deliberate indifference required to show a constitutional violation. Gonzalez does not legitimately dispute that Peterman made a mistake. Scott is therefore entitled to summary judgment as to Gonzalez's claim against her for failure to supervise.

Moreover, Gonzalez does not allege that Peterman waited for, or sought, Scott's approval before allowing Odunukwe access to the N-block. Gonzalez does not otherwise allege or show that Scott had any reason to know that Peterman was about to make a mistake or violate policy by allowing Odunukwe access to the N-Block such that Scott could reasonably have been expected to jump in and prevent Peterman from remotely opening the door. Thus, a reasonable officer in Scott's shoes would not have known she needed to closely supervise Peterman, and Scott is entitled to qualified immunity on Gonzalez's claim. *See Parrish*, 594 F.3d at 1002 (finding Sheriff entitled to qualified immunity on failure-to-supervise claim where parties agreed that Sheriff had no occasion

---

[5] *Walton v. Dawson*, 752 F.3d 1109 (8th Cir. 2014) (citing *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003)).

to know of need for close supervision of officer).

As to his claim against Helder, Gonzalez does not allege that Helder was personally involved in any way in the incident that occurred on March 17, 2010. Rather, Gonzalez's claim against Helder is based on a theory that Helder failed to adequately train his subordinates. "[A] supervisor's failure to train an inferior officer may subject the superior to § 1983 liability in his individual capacity, where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id*. (quotation omitted). "The plaintiff must also prove that the alleged failure to train actually caused the constitutional deprivation." *Id*. (quotation omitted). As with a failure-to-supervise claim, a failure-to-train claim requires a plaintiff to show that a supervisor "was deliberately indifferent to or tacitly authorized the offending act[]. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)).

Gonzalez argues that the training given to detention deputies at the Washington County detention center—consisting of teaching the deputies to identify the person calling for entry into a cell block by voice, name, or sight—was constitutionally inadequate. Gonzalez's claim against Helder fails, however, for several reasons: First, as already stated, Gonzalez has not adequately raised an issue as to whether any underlying constitutional violation occurred. Second, even assuming that training officers to identify a person by voice, name, or sight was inadequate and that a constitutional deprivation occurred, Gonzalez has not shown that the inadequacy actually caused the deprivation he alleges. Gonzalez does not legitimately dispute that Peterman opened the N-Block door based on his mistaken belief that he could identify Udunukwe's voice as that of a deputy.

Gonzalez does not propose any course of training that could have prevented Peterman from opening the door, but a case of mistaken identification does not constitute a failure of the training then in place at the Washington County detention center. Rather, it constitutes a personal misjudgment on the part of Peterman or a failure of Peterman to adequately abide by the training. Third, Gonzalez does not adequately raise an issue regarding whether Helder should have been on notice that training was inadequate. Gonzalez argues that Helder should have simply known that the training was inadequate based on the nature of the training itself. If mere notice of what a training program consists of were enough to impose supervisory liability on a § 1983 claim, there would be no need to require notice of inadequate training as a separate element of such a claim. Notice would have to be presumed. The Court cannot, therefore, accept Gonzalez's argument that notice and deliberate indifference should be inferred in this case. Helder is entitled to summary judgment in his favor on Gonzalez's claim against him for failure to train.

Finally, "a supervisory officer is entitled to qualified immunity for a § 1983 failure to train action unless a reasonable supervisor would have known that his training program (or lack thereof) was likely to result in the specific constitutional violation at issue." *Parrish*, 594 F.3d at 1002. The Court finds that, even had Gonzalez raised a genuine issue of material fact regarding his claim against Helder, Helder would otherwise be entitled to qualified immunity as Helder could not reasonably have been expected, given the circumstances of this case, to know that his training program was inadequate.

      **B.**    **Unconstitutional Policy or Custom: Defendant Washington County**

"To establish a submissible claim against [Washington County], [Gonzalez] must show a genuine issue for trial about whether an individual official committed a constitutional violation

pursuant to an official custom, policy, or practice of the governmental entity." *Montgomery v. City of Ames*, 749 F.3d 689, 694 (8th Cir. 2014). Gonzalez has failed to show a genuine issue for trial as to any County employee engaging in activity rising to the level of a constitution violation regarding the March 17, 2010, incident. Furthermore, Gonzalez has failed to show a genuine issue for trial that any employee, in allowing Odunukwe access to Gonzalez, acted pursuant to an official custom, policy, or practice of Washington County. In fact, Gonzalez concedes that Peterman acted contrary to policy when he did not adequately identify Odunukwe before opening the N-Block door. Gonzalez also concedes that it was against policy to allow Odunukwe to wander unaccompanied through the detention center.

Gonzalez's claim as to Washington County rests on his assertion that Washington County's failure to implement its own policies amounts to an unconstitutional practice. Gonzalez does not, however, point to evidence of any prior incidents that would evidence a widespread practice of Washington County in failing to properly follow policy when opening cell doors or when allowing inmates to walk through a detention center unaccompanied. Instead, Gonzalez argues that the circumstances of the incident on March 17, 2010, alone are sufficient to show that the surveillance and security policies at the Washington County Detention Center have little force or effect. Contrary to Gonzalez's argument, liability based on a county's custom or usage "cannot arise from a single act." *Crawford v. Van Buren County, Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) (quotation omitted). Instead, "liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a custom or usage with the force of law." *Id.* (quotation omitted). "[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional conduct." *Id.* (quotation omitted).

Gonzalez has failed to show that any official engaged in unconstitutional conduct in regards to the March 17, 2010, incident and has failed to show or argue that Washington County engaged in a continuing, widespread, persistent pattern of unconstitutional conduct. Gonzalez has not, therefore, raised a genuine issue of any fact material to his claims against Washington County, and the Court finds that Washington County's motion for summary judgment should be granted.

### C.  John Does

No specific allegations have been made against John Does 1 and 2. On July 18, 2014, the Court entered an order denying Gonzalez's motion to amend his complaint to add a new defendant[6] for the reasons stated in that order. In any event, far more than 120 days have passed since the complaint was filed without these unnamed defendants being served as required by Federal Rule of Civil Procedure 4(m). The Court finds, therefore, that all claims against John Does 1 and 2 should be DISMISSED WITHOUT PREJUDICE.

### IV.  Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that Defendants' motion for summary judgment (Doc. 12) is GRANTED.

IT IS FURTHER ORDERED that all claims against John Does 1 and 2 are DISMISSED WITHOUT PREJUDICE.

Judgment will be entered accordingly.

---

[6] The Court notes that Gonzalez did not actually request that the proposed new defendant be substituted for one of the John Does.

IT IS SO ORDERED this 26th day of August, 2014.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE